IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DOROTHY BROCK-BURCHETT**                                                               **PLAINTIFF**

vs.                                       No. 4:20-cv-374-DPM

**MCNEW FABRICATION, INC.,**                                                             **DEFENDANTS**
**and JEFFREY MCNEW**

### PLAINTIFF'S TRIAL BRIEF

#### I. INTRODUCTION

This is an action brought by Plaintiff Dorothy Brock-Burchett under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Arkansas Minimum Wage Act ("AMWA") A.C.A. § 11-4-201 *et seq.*, to recover minimum wages and overtime wages owed by Defendants McNew Fabrication, Inc., and Jeffrey McNew (collectively "Defendant" or "Defendants"). Defendants owned and operated a metal fabrication, welding and installation shop located in Greenbrier, Arkansas, known as McNew Fabrication, Inc. ("McNew Fabrication"). Defendants employed Plaintiff as an office manager. Defendants misclassified Plaintiff as exempt from the FLSA's minimum wage and overtime provisions and purported to pay Plaintiff a salary, but Plaintiff's duties and responsibilities for Defendants were not consistent with the administrative exemption at issue in this case. Plaintiff frequently worked over forty hours per week during her employment with Defendants, but because of its misclassification of Plaintiff, Defendants did not pay Plaintiff an overtime premium for any of her hours worked as required by the FLSA and AMWA. Defendants also failed to pay Plaintiff in some weeks, violating the

minimum wage provisions of the FLSA and the AMWA. Accordingly, Plaintiff seeks to recover unpaid wages and attorneys' fees and costs.

## II. BRIEF FACTUAL BACKGROUND

Plaintiff was employed by Defendants McNew Fabrication, Inc., and Jeffrey McNew (hereinafter collectively "Defendants") from approximately March of 2016 until November of 2019. Defendants operate a metal fabrication, welding and installation shop located in Greenbrier, Arkansas. Plaintiff was hired by Defendant Jeffrey McNew (hereinafter "McNew") to work in the office. When Plaintiff was hired, Plaintiff was told her job title was "office manager," but her job duties were not managerial and she was commonly referred to around the workplace as a "secretary."

The work Plaintiff performed for Defendants involved preparing and sending out invoices on accounts receivable, receiving invoicing on accounts payable, writing checks for and mailing out or delivering payments owed on accounts payable, processing payroll, making purchases, filing, running business errands, and tracking supplies and inventory purchased. These were the tasks Plaintiff was hired to perform and that occupied the majority of Plaintiff's time spent working for Defendants. All of this work was done under the direction and close supervision of McNew.

More particularly, decisions regarding what to bill to customers, which accounts payable to pay, how much to pay them and when to pay them were all decisions that were made and tightly controlled by McNew, who micromanaged payments as an accounting tool. McNew gave specific instructions to Plaintiff regarding timing and amounts of payments, delaying payments to some creditors, paying in installments to others, disputing charges, and otherwise manipulating payments in an effort to maintain a

balanced budget. Business-related errands Plaintiff ran included picking up payments on accounts receivable, dropping off payments on accounts payable, picking up supplies and inventory purchased, going to the bank, and delivering products. Plaintiff also ran personal errands for and at the direction of McNew.

None of Plaintiff's job duties qualified her for any exemption to the FLSA's minimum and overtime wage requirements.

### III. ISSUES TO BE RESOLVED AT TRIAL

Plaintiff anticipates that the primary disputes at trial will be (a) the status of McNew as Plaintiff's employer, but only as it relates to "coverage" under the FLSA; (b) whether Plaintiff's job duties qualify her for the administrative exemption from the minimum wage and overtime requirements of the FLSA and AMWA; (c) whether Defendants paid Plaintiff a "salary;" (d) the number of hours worked by Plaintiff and the amount of the resulting overtime wage violation; (e) whether Defendants failed to pay Plaintiff minimum wage in certain weeks during Plaintiff's employment; (f) the applicable statute of limitations; and (g) Plaintiff's entitlement to liquidated damages pursuant to the FLSA, the AMWA, and their relating regulations.

McNew Fabrication's coverage under the FLSA and AMWA are not at issue in this case. *Compare* First Amended and Substituted Complaint ("Amended Complaint") ¶ 17, 18 (alleging that McNew Fabrication "employed at least two individuals who were engaged in interstate commerce or in the production of goods for interstate commerce, or had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce by any person, such as welding and fabrication tools;" and had "annual gross volume of sales made or business done was not less than

Page 3 of 17
**Dorothy Brock-Burchett v. McNew Fabrication, Inc., et al.**
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-374-DPM
**Plaintiff's Trial Brief**

balanced budget. Business-related errands Plaintiff ran included picking up payments on accounts receivable, dropping off payments on accounts payable, picking up supplies and inventory purchased, going to the bank, and delivering products. Plaintiff also ran personal errands for and at the direction of McNew.

None of Plaintiff's job duties qualified her for any exemption to the FLSA's minimum and overtime wage requirements.

### III. ISSUES TO BE RESOLVED AT TRIAL

Plaintiff anticipates that the primary disputes at trial will be (a) the status of McNew as Plaintiff's employer, but only as it relates to "coverage" under the FLSA; (b) whether Plaintiff's job duties qualify her for the administrative exemption from the minimum wage and overtime requirements of the FLSA and AMWA; (c) whether Defendants paid Plaintiff a "salary;" (d) the number of hours worked by Plaintiff and the amount of the resulting overtime wage violation; (e) whether Defendants failed to pay Plaintiff minimum wage in certain weeks during Plaintiff's employment; (f) the applicable statute of limitations; and (g) Plaintiff's entitlement to liquidated damages pursuant to the FLSA, the AMWA, and their relating regulations.

McNew Fabrication's coverage under the FLSA and AMWA are not at issue in this case. *Compare* First Amended and Substituted Complaint ("Amended Complaint") ¶ 17, 18 (alleging that McNew Fabrication "employed at least two individuals who were engaged in interstate commerce or in the production of goods for interstate commerce, or had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce by any person, such as welding and fabrication tools;" and had "annual gross volume of sales made or business done was not less than

$500,000.00 (exclusive of excise taxes at the retail level that are separately stated) during each of the three calendar years preceding the filing of this complaint") (ECF No. 9) *with* Defendants' Answer to First Amended and Substituted Complaint ("Response to Amended Complaint") ¶ 17, 18 (admitting same) (ECF No. 10).

Defendants' status as Plaintiff's "employer" as that term is defined by the FLSA and AMWA is also undisputed. *Compare* Amended Complaint ¶ 23 (alleging that At all relevant times herein, Defendants were Plaintiff's "employer" within the meaning of the FLSA and AMWA") *with* Response to Amended Complaint ¶ 23 (admitting same). The issue Defendants appear to raise is that McNew did not meet the $500,000 threshold for FLSA coverage. It is also undisputed that Defendants did not pay Plaintiff an overtime premium of one and one-half times her regular rate for her overtime hours worked. Response to Amended Complaint ¶ 32. Finally, it is undisputed that Defendants failed to maintain records of Plaintiff's hours worked.

**A.     McNew was Plaintiff's employer under the FLSA and AMWA along with McNew Fabrication.**

The FLSA and AMWA define an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee..." 29 U.S.C. § 203(d) (emphasis); see also, Ark. Code Ann. § 11-4-203(4)(A). "Person" includes individuals, partnerships, corporations, etc., as well as "any organized group of persons." 29 U.S.C. § 203(a). Whether a person is an employer under the FLSA is a question of law, although "subsidiary findings are of fact." *Beliz v. W.H. McLeod Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir. 1985).

"The definition of 'employer' under the FLSA is...to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Bonnette v.*

*California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983); see also, *Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003). "This is 'the broadest definition. . . ever included in any one act.'" *Reyes v. Remington Hybrid Seed Co.*, 495 F.3d 403, 408 (7th Cir. 2007) (citing *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945)). "[I]it encompasses 'working relationships, which prior to [the FLSA], were not deemed to fall within an employer-employee category.'" *Zheng*, 355 F.3d at 69 (citing *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51, (1947)); see also, *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 326 (1992) (the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under. . . traditional agency law principles.").

"The determination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity.'" *Bonnette*, 704 F.2d at 1469; 29 C.F.R. § 791.2(a) ("A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case."); 010.14 Ark. Code R. § 002-110(A) (same).

"The overwhelming weight of authority is that a corporate officer with operational control of a corporations covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984); *see Lee v. Coahoma County, Miss.*, 937 F.2d 220, 226 (5th Cir.1991) (modified on other grounds, 37 F.3d 1068 (5th Cir. 1993)). A corporate officer need not have an ownership interest in the company to be liable under the FLSA. See *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993).

The test is one of "economic reality," rather than "technical concepts." *See Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961); *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). Key factors under this test of economic reality include whether an alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Williams v. Henagan, 595 F.3d 610, 620 (5th Cir. 2010) (citing Watson v. Graves, 909 F.2d 1549, 1553 (5th Cir. 1990)); *see also Irizarry v. Catsimatidis*, 2013 U.S. App. LEXIS 13796, 11 (2d Cir. N.Y. July 9, 2013); *Baker v. Stone County*, 41 F. Supp. 2d 965, 980 (W.D. Mo. 1999) (applying the same four-factor test).

McNew falls under the "employer" category of the FLSA and AMWA. During Plaintiff's time of employment, McNew was a principal, director, officer, and/or owner of McNew Fabrication. McNew's hired Plaintiff and dictated the conditions of Plaintiff's employment with Defendants, including establishing the pay policies that applied to Plaintiff. Finally, McNew negotiates contracts with McNew Fabrication's clients, which is the source of income for McNew. Notably, the tests for what constitutes an "employer" is not the same as the test for "coverage" under the FLSA, meaning McNew does not have to meet the coverage requirements to qualify as an employer under the FLSA.

Under the broad definition of "employer" pursuant to FLSA regulations, McNew is someone who was "acting directly or indirectly in the interest of an employer in relation to an employee..." 29 U.S.C. § 203(d). Therefore, McNew is Plaintiff's employer along with McNew Fabrication.

**B.     Plaintiff's job duties did not qualify her for the administrative exemption.**

The FLSA and AMWA create certain financial obligations upon employers such as Defendants, including the requirements of minimum wages and that for every hour worked in excess of a certain limit, generally forty per week, the employer must pay a premium rate of one-and-one-half times the employee's normal hourly rate.  29 U.S.C. § 206, 207; Ark. Code Ann. § 11-4-210; Ark. Code Ann. § 11-4-211. The FLSA exempts certain employees from its overtime protections, including "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); Ark. Code Ann. § 11-4-203(3)(A).[1] The employee must meet each of the prongs of the executive, administrative, and professional exemptions to qualify for the exemption, and Defendants bear the burden of proving the applicability of an exemption. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1156 (11th Cir. 2008).

At issue in this case is the administrative exemption. Under 29 C.F.R. § 541.200, an "employee employed in a bona fide administrative capacity" means any employee:

(1) Compensated on a salary or fee basis at a rate of not less than $455[2] per week . . . ;
(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

---

[1] The Arkansas Department of Labor regulations direct that it may rely on interpretations of the U.S. Department of Labor and federal precedent established under the FLSA in interpreting and applying the provisions of" the AMWA and its regulations "except to the extent a different interpretation is clearly required." Administrative Regulations of the Labor Standards Division of the Ark. Department of Labor ("Ark. DOL Reg.") 010.14-112; *see also* Ark. Code Ann. § 11-4-218(f) ("When construing this subchapter, a court may look for guidance to state and federal decisions interpreting the Fair Labor Standards Act of 1938, as amended and codified in 29 U.S.C. § 201 et seq., as it existed on January 1, 2017, which decisions and act shall have persuasive authority only."); *Gerber Prods. Co. v. Hewitt*, 2016 Ark. 222, ¶¶ 11–12, 492 S.W.3d 856, 863.

[2] The current salary basis amount is currently $684.00 per week; however, during the time frame covered by the events in this case, the salary basis amount was $455.00. 29 C.F.R. § 541.200 (LEXIS) ("PUBLISHER'S NOTE: Paragraph (a)(1) was revised at 84 FR 51230, 51306, Sept. 27, 2019, effective Jan. 1, 2020.").

The phrase "exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered," and "matters of significance" refers to "the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a).

The following factors should be considered when determining whether an employee exercises the requisite discretion and independent judgment:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects the business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29. C.F.R. § 541.202(b). Many of these activities pertain to whether the employee exercised discretion as to matters affecting the management or operation of the business, or was involved in planning business objectives. Other factors relate to whether an employee had the authority to bind the company or negotiate on behalf of the company.

The phrase "discretion and independent judgment" must be applied in light of all the facts involved in the particular employment situation in which the question arises, and "must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(b), (e).

Where an employee "merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or . . . determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices," the employee is not exercising discretion and independent judgment according to the FLSA. *Schaefer v. Indiana Michigan Power Co.*, F.3d 394, 404 (6th Cir. 2004).[3] This is true even if there is some leeway in reaching a conclusion, as when an acceptable standard includes a range or a tolerance above or below a specific standard. *Id*.

Employees who engage in "clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, or recurrent or routine work," are not exercising discretion and independent judgment. *Id*. In addition, "[a]n employee does not exercise discretion and independent judgment in matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly." 29 C.F.R. § 541.202(f).

Plaintiff did not qualify for the third prong of the administrative exemption because she did not exercise "discretion or independent judgment with respect to matters of significance," and even if she did those activities were not her "primary duties." Plaintiff's job duties consisted primarily of preparing and sending out invoices on accounts receivable, receiving invoicing on accounts payable, writing checks for and mailing out or delivering payments owed on accounts payable, processing payroll, making purchases, filing, running business errands, and tracking supplies and inventory purchased. All of this

---

[3] "Perhaps the most frequent cause of misapplication of the term 'discretion and independent judgment' is the failure to distinguish it from the use of skill in various respects." Schaefer, 358 F.3d at 404.

work was done under the direction and close supervision of McNew. None of this work involved the exercise of discretion and independent judgment. Even if Plaintiff could have utilized discretion and independent judgment with respect to these tasks, that opportunity vanished with McNew's intense micromanagement of Plaintiff's tasks.

Assuming Defendants could demonstrate that Plaintiff performed some qualifying tasks, Defendants cannot show that such tasks were Plaintiff's primary duties. The regulations define "primary duty" as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). When faced with a mix of exempt and non-exempt duties, a fact finder must determine whether the exempt tasks comprise the plaintiff's "primary duties." *Baldwin v. Key Equip. Fin., Inc.*, 2006 U.S. Dist. LEXIS 51609, *37–38 (D. Colo. July 17, 2006). In making this determination, courts in consider a non-exhaustive list of factors including: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Smith v. Frac Tech Servs., LLC*, No. 4:09-cv-679-JLH, 2011 U.S. Dist. LEXIS 3165, at *17 (E.D. Ark. Jan. 11, 2011). The most frequent and most important duties Plaintiff performed involved her mundane office work of filing, paying invoices, answering phones and the like. Therefore, Plaintiff's primary duties did not qualify her for the administrative exemption.

**C.    Defendants did not pay Plaintiff a "salary" as required by the administrative exemption.**

As set forth above, in order to qualify for the administrative exemption, Defendants were required to pay Plaintiff a "salary," but failed to do so. Subject to certain exceptions,

an employee is paid on a "salary basis" only "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). This means the "employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." 29 C.F.R. § 541.602(a)(1). However, deductions may be made for certain limited instances, such as, for example, when the employee "is absent from work for one or more full days for personal reasons, other than sickness or disability." 29 C.F.R. § 541.620(b)(1)–(7).[4]

As referenced above, the FLSA permits a salary to be calculated on an hourly basis, but the FLSA also places certain restrictions on this practice, including that the employee receives a guaranteed minimum amount of pay regardless of the number of hours worked. *See* 29 C.F.R. § 541.604(b). A "guaranteed" minimum amount is a critical element of establishing that an employee was paid a salary, meaning "the employer is contractually obligated not to change its mind and reduce whatever amount it previously determined to provide." *Hughes v. Gulf Interstate Field Servs.*, 878 F.3d 183, 192 (6th Cir. 2017).

In the current case, Defendants did not guarantee Plaintiff a minimum amount of pay each week. Defendants' paychecks reflect inconsistent weekly amounts throughout 2017, 2018, and 2019. Moreover, Defendants frequently did not pay Plaintiff for entire

---

[4] In addition, the FLSA provides that an employer may pay an employee amounts in addition to the guaranteed minimum salary and this "additional compensation may be paid on any basis (*e.g.,* flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis)." 29 C.F.R. § 541.604(a).

weeks during which Plaintiff worked, including February 17, 24, 2017; June 7, 2017; August 4, 11, 2017; September 15, 22, 2017; April 20, 2018; May 4, 2018; February 22, 2019; March 1, 8, 15, 2019; April 5, 12, 19, 2019; May 10, 2019; June 21, 28, 2019; July 5, 12, 19, 2019; August 16, 23, 2019. *See* Exhibit 2 to Plaintiff's Motion for Partial Summary Judgment, Payroll Records (ECF No. 22-2). Therefore, Defendants did not meet the requirements of paying Plaintiff a guaranteed minimum amount each week.

To be sure, proof that an employee was paid the same amount or more than the purported salary amount each week, standing alone, is insufficient to prove that the employee was paid on a salary basis. *Id*; *Snead*, 2018 U.S. Dist. LEXIS 31922, at *11 ("[E]vidence that Plaintiff regularly received a qualifying amount of pay is not the same as evidence that he was guaranteed to receive that amount regardless of the quality or quantity of work he performed"); *Keen v. DXP Enters.*, No. 5:15-cv-137-OLG, 2016 U.S. Dist. LEXIS 81069, at *14 (W.D. Tex. June 6, 2016) ("[A] claim that an employee actually was paid more than $455 each week is distinct from a showing that they were guaranteed to receive that amount").

The evidence in this case demonstrates that Defendants did not guarantee Plaintiff any minimum pay. Rather, Plaintiff's alleged "salary" was merely a façade designed to allow Defendants to avoid the FLSA's overtime requirement.

**D.  Plaintiff regularly worked more than forty hours per week, and Defendants failed to maintain accurate records of Plaintiff's hours worked.**

The FLSA imposes requirements on the employer of keeping records of an employee's hours worked. 29 C.F.R. § 516.2(a)(7), 516.3; Ark. Code Ann. §11-4-217; ARLSD § 010.14-102(A)(1)(g). Normally, an employee who sues under the FLSA has the burden of proving that he performed work for which he was not properly compensated;

however, that burden is relaxed where the employer fails to fulfill its obligation of keeping accurate records containing the information required under the FLSA. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–688 (1946). Without this burden-shifting provision, an employee would essentially be penalized, and the employer rewarded, for the employer's failure to comply with the record-keeping requirements of the FLSA. *Id*. Indeed, an employer who fails to comply with the requirement that it maintain adequate employment records "pays for that failure at trial by bearing the lion's share of the burden of proof." *Gomez v. Tyson Foods, Inc.*, 2013 U.S. Dist. LEXIS 142586, *30 (D. Neb. Oct. 2, 2013) (citing *Secretary of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991)).

While the initial burden even under *Mt. Clemens* remains on the employee, "that burden is a minimal one." *Id*. The "proof" required under the burden-shifting provisions of *Mt. Clemens* may be nothing more than the employee's own credible sworn testimony, which does not have to be an exact recitation of times, dates, and hours worked to shift the burden of proof to the employer. *Arias v. United States Service Industries Inc.*, 80 F.3d 509 (D.C. Cir. 1996). The employee may simply testify to the best of her recollection regarding the approximate number of hours worked, and an employer who has failed to fulfill its duty under the FLSA to maintain records which could have been used to rebut the employee's testimony must bear the burden of any consequent imprecision in calculating damages. *Martin v. Selker Bros.*, Inc., 949 F.2d 1286 (3rd Cir. 1991); *Mt. Clemens*, 328 U.S. at 688 ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the FLSA]."); *Mitchell v. Reynolds*, 125 F. Supp. 337 (W.D. Ark. 1954) (although the employer was free to ask employees to keep

their own records of hours, the employer did so at its own risk and having done so, did not escape its FLSA obligations).

To be clear, where the employer has failed to maintain accurate records, it is neither uncommon nor inappropriate for an employee to support her claims satisfactorily and wholly by offering an average range of hours worked each week. *Baden-Winterwood v. Life Time Fitness, Inc.*, 729 F. Supp. 2d 965, 991–992 (S.D. Ohio 2010) ("The Court must determine the amount of uncompensated hours each testifying plaintiff worked. That determination is by necessity imprecise, involving estimates and averages, since Defendant failed to keep records of the precise time Plaintiff worked.").

Although the *Mt. Clemens* burden-shifting provision was created under the FLSA, it is also applicable to claims under the AMWA. Arkansas regulations specifically permit reliance on the interpretations of federal precedent established under the FLSA in interpreting and applying the provisions of the AMWA and Rule 010.14-100 through 010.14-113, "except to the extent a different interpretation is clearly required." Admin. Reg. Labor Standards Div. Ark. Dep't. of Labor Rule 010.14-112. To the extent that "a different interpretation is clearly required," in this case, it is that the AMWA should be construed even more favorably to Plaintiff than the FLSA based on the AMWA's explicit directives that it "shall be liberally construed in favor of its purposes." Ark. Code Ann. § 11-4-204(b).

Here, the burden-shifting provisions of *Mt. Clemens* apply because Defendants failed to keep any records of hours worked by Plaintiff, and Plaintiff is entitled to prove damages by testifying to her hours worked merely by recollection. Plaintiff estimates that she worked forty-five to fifty-five hours per week during her employment with Defendants.

**E.     Defendants failed to pay Plaintiff minimum wage in certain weeks during Plaintiff's employment.**

As noted above, the FLSA and AMWA require that Defendants pay certain minimum wages through forty hours per week. 29 U.S.C. § 206 (requiring minimum wages of $7.25 per hour); Ark. Code Ann. § 11-4-210 (requiring minimum wages of $8.00 per hour beginning January 1, 2016; $8.50 per hour beginning January 1, 2017; $9.25 per hour beginning January 1, 2019). Defendants failed to pay Plaintiff anything in the following weeks: February 17, 24, 2017; June 7, 2017; August 4, 11, 2017; September 15, 22, 2017; April 20, 2018; May 4, 2018; February 22, 2019; March 1, 8, 15, 2019; April 5, 12, 19, 2019; May 10, 2019; June 21, 28, 2019; July 5, 12, 19, 2019; August 16, 23, 2019. *See* Exhibit 2 to Plaintiff's Motion for Partial Summary Judgment, Payroll Records (ECF No. 22-2). Plaintiff performed work in each of these weeks. Plaintiff does not qualify for the administrative exemption, meaning Defendants violated the minimum wage requirements of the FLSA and AMWA during these weeks because Defendants paid Plaintiff nothing at all.

**F.     The applicable statute of limitations is three years**

A two-year statute of limitations applies to FLSA actions unless the defendant's violation was willful, in which case the statute of limitations is extended to three years. 29 U.S.C. § 255. A violation of the FLSA is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The statute of limitations for violations of the AMWA is two years. Ark. Code Ann. § 11-4-218(g).

The facts herein demonstrate that Defendants' violations of the FLSA were willful. Minimum wage and overtime laws are among the most widely known and understood

laws in the country. Plaintiff expects the evidence at trial to support a conclusion that Defendants misclassified her employees as a deliberate tactic to avoid the minimum wage and overtime pay requirements of the FLSA and AMWA, rather than a good-faith misinterpretation of the law. Because Defendants willfully defied the FLSA and AMWA, the appropriate statute of limitations is three years.

**G.     Plaintiff is entitled to an award of liquidated damages.**

When an employer is found to have violated the overtime and minimum wage requirements of the FLSA, the employer "shall be liable" to the employee for liquidated damages in an amount equal to the amount of wages owed. 29 U.S.C. § 216. Liquidated damages are not penal in nature but represent compensation to the employee for otherwise obscure and difficult to prove damages. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). Subject to the discretion of the Court, an employer may be wholly or partially relieved of his duty to pay liquidated damages only if the employer proves "that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260.

An employer who violates the FLSA carries the burden of proving its claim of good faith and reasonable grounds, and the employer must show that it acted in both objective and subjective good faith, which requires that an employer demonstrate that it "took affirmative steps to ascertain the [FLSA's] requirements but nonetheless violated its provisions." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008). Liquidated damages are "the norm" where an FLSA violation is found. *Id*.

Defendants will not be able to carry their burden of proving that they acted in both objective and subjective good faith. The minimum wage and overtime provisions of the FLSA are some of the most fundamental and commonly known protections offered to employees. Defendants' failure to pay a proper minimum wage and overtime premiums is inexcusable.

### III. CONCLUSION

Plaintiff is entitled to all wages unpaid by Defendants for hours worked by Plaintiff during Plaintiff's employment with Defendants, including unpaid overtime wages and unpaid minimum wages. There is no factual or legal basis for Defendants' failure to pay Plaintiff as required by the FLSA and AMWA, and Defendants' willful violation of the FLSA's mandates necessitates a three-year statute of limitations and an award of liquidated damages.

Respectfully submitted,

**DOROTHY BROCK-BURCHETT, PLAINTIFF**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Ste. 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

Sean Short
Ark. Bar No. 2015079
sean@sanfordlawfirm.com

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com